FILED

IN THE UNITED STATES DISTRICT COURT 2016 MAR 16   PM 2: 32
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BLAYNE WILLIAMS,

             **Plaintiff,**

-vs-                                               **Case No.  A-14-CA-695-SS**

CITY OF AUSTIN,

             **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Blayne Williams' Third Amended Complaint [#33]; Defendant City of Austin's Motion for Summary Judgment [#42]; Plaintiff's Response [#64] thereto; Defendant's Reply [#67] in support; and Defendant's Objections and Motion to Strike Evidence Attached to Plaintiff's Response [#62][1]. Having considered the documents, the governing law, the arguments of the parties, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a Title VII employment discrimination case brought by Plaintiff Blayne Williams, an African-American Austin Police Department (APD) police officer, against Defendant City of Austin, his employer.  Williams claims the City retaliated and discriminated against him on the basis of his race by initiating three internal affairs investigations into his conduct as an officer, indefinitely suspending him from APD, and bypassing him three times for a promotion.

---

[1] Because the Court reaches the same conclusion even considering the objected-to portions of Plaintiff's exhibits, the City's objections are DISMISSED AS MOOT.

Williams seeks declarations the City violated federal and state law, as well as a Meet and Confer Agreement entered into between the City and the Austin Police Association, by failing to provide him with sufficient notice of the complaints against him and by not providing him a meaningful opportunity to be heard. Finally, Williams seeks a declaration the City violated Article 55 of the Texas Code of Criminal Procedure by violating an expunction order. The facts, taken in the light most favorable to Williams, are as follows.[2]

## I.      HEB Incident

On February 11, 2011, while off-duty and in plain clothes, Williams was involved in a physical altercation with an HEB grocery store employee after the employee cut him in line at the store's ATM. *See* Mot. Summ. J. [#42-2] Ex. B at 010085. At the conclusion of an Internal Affairs (IA) investigation into his conduct, Williams was found to have violated the following four policies: (1) Responsibility to Know and Comply (all laws); (2) Police Involvement when Off-duty/Reporting of Incident; (3) Acts Bringing Discredit to the Department; and (4) Requirements of Duty/Devotion of Time and Attention. *Id.* at 010005. After a Disciplinary Review Hearing (DRH), Williams agreed to a temporary 90-day suspension as well as a one-year probationary period beginning at the conclusion of the suspension. *Id.* [#42-6] Ex. D at 008889.

---

[2] The Court's task of recounting the facts and arguments in this case was made exponentially more complicated by the incoherence of Williams' Response brief. Aside from generally being difficult to understand, the filing contained many simple spelling, citation and formatting errors. There is no excuse for such shoddy briefing, especially here, where the Court twice extended counsel's filing deadline. Further, even with the additional time, Williams failed to meet the amended deadline because his counsel attempted to file over a thousand pages of exhibits at the last minute and the electronic filing system rejected the submission. What followed is no less than five separate motions for leave to file sealed documents out of time, docketed over the course of four consecutive days past the filing deadline. Counsel's competency here fell far below the standards of federal practice and the Court is not confident Williams has been adequately represented in this matter.

In April 2012, Williams filed a charge of discrimination with the EEOC, claiming the 90-day temporary suspension was a product of race discrimination. *See id.* [#42-13] Ex. I. Williams subsequently filed suit in state court and, on October 14, 2013, the district court granted summary judgment in favor of the City and dismissed the suit with prejudice. *See id.* [#42-15] Ex. L.

## II.    The Hyatt Incident

Approximately one year after he filed his EEOC charge, Williams was again investigated for police misconduct. The incident occurred on April 10, 2013, while Williams was working his approved secondary employment as a Manager On-Duty/Security Person for the Hyatt Regency Austin. At approximately 6:30 pm, Williams was notified that a female hotel guest complained about finding a cell phone concealed in the ceiling partition above her guestroom bathroom. *See id.* [#42-3] Ex. B-1 at 010321. The Hyatt manager on duty believed the cell phone belonged to a hotel engineer who had misplaced it in the ceiling after working in the area and asked Williams to investigate and verify the complaint. When he arrived, Williams saw that one of the ceiling partitions had been moved and that there was a hole the circumference of a pen or a pencil in one of the partitions directly over the shower. Williams recorded a short video of the scene and photographed the partitions. Williams then reached behind the ceiling partitions and recovered a cell phone which was powered off. Williams powered the phone back on, but its battery died before Williams could confirm whether it had been used to make any illicit recordings.

Williams then brought the phone back to the assistant manager on duty, explaining that the phone had been found in the ceiling and that "this was possibly a felony incident of improper video or photography." *Id.* [#42-3] Ex. B-1 at 010322. Williams made a number of attempts to locate a charger for the phone but was ultimately unsuccessful. Williams also returned to the room with a

-3-

member of the Hyatt's engineering team to further investigate the likelihood the hole was created by one of the engineers as part of their duties rather than as part of a potential crime. Williams was aware engineering employees often performed electrical work above the ceiling partitions and the phone he located was the same type used by engineers in the performance of their duties. At the end of his shift, he took the cell phone to the security department and left a note directing the head of security to charge the phone and to find, fire, and prosecute the employee if any improper video or photography was found. *Id.* [#42-2] Ex. B at 010262. Williams then briefed another security officer and completed an internal hotel incident report. Williams did not write an APD incident report and did not call APD to respond.

The following day, security personnel were able to power up the phone and found material leading them to believe a Hyatt employee had been improperly filming guests. APD was immediately contacted.[3] Once notified, Williams' supervisors instructed Williams to write a supplemental report regarding the incident and submit it to the department. *See also id.* [#42-2] Ex. B at 010262–63.

## III.   Hyatt Internal Affairs Investigation and Discipline

Based on Williams' failure to generate an offense report and failure to seize the phone as evidence, Commander Fred Fletcher initiated an IA investigation into the incident in April 2013. On September 3, 2013, at the conclusion of the investigation, Williams was notified that two policy violations had been sustained: (1) Incident Reporting and Documentation; and (2) Property and Evidence Collection Procedures. *See id.* [#42-3] Ex. B at 010244 (First Notice of Sustained

---

[3] Hyatt ultimately terminated the employment of the employee suspected of videotaping hotel guests. Criminal charges were also filed.

Allegations).  The disciplinary recommendation from Williams' chain of command was "Written Recommendation to 3 days."

On September 20, 2013, after a Disciplinary Meeting (DM), Williams received a second Notice of Sustained Violations.  The second notice added two new policy violations to the original two sustained in the first notice—Neglect of Duty and Honesty—bringing the total number of violations to four. *Id.* [#42-3] Ex. B at 010238–39 (Second Notice of Sustained Allegations).  With regard to the Honesty violation, Williams was alleged to have lied about his level of suspicion a crime had taken place at the Hyatt in order to hide or mitigate his culpability for failing to preserve the phone as evidence or document the incident with APD.  *Id.* The disciplinary recommendation from Williams' chain of command for the four sustained violations in the second notice was "Up to Indefinite Suspension." *Id.* at 010239.

On October 2, 2013, after a DRH with Chief Art Acevedo and his chain of command, Williams was indefinitely suspended.  *Id.* [#42-5] Ex. D at 008882–88 (Indefinite Suspension Mem.).[4]  According to the disciplinary memorandum, Williams was indefinitely suspended for failing to understand and perform his duties and obligations as a police officer, making contradictory statements to investigators and his chain of command,[5] his inability to take responsibility for his actions, and his disciplinary history, including the 90-day suspension related to the HEB Incident. *Id.*

---

[4] Indefinite suspension is the equivalent of dismissal.  TEX. LOCAL GOV'T CODE § 143.052(2).

[5] In an affidavit prepared for this litigation, Acevedo explained that "Williams was trying to have it both ways—on the one hand he suspected a crime had occurred and the situation needed further investigation, on the other hand he didn't believe a crime had occurred and therefore it was appropriate for him to allow civilians to handle the situation." *Id.* [#42-10] Ex. G at 7 (Acevedo Affidavit).

Williams appealed his indefinite suspension to a third-party hearing examiner. On October 31, 2014, the hearing officer issued an order sustaining three of the violations but overturning the Honesty violation. *Id.* at 010855–65 (Hearing Examiner Op.). The hearing examiner found that the disciplinary memorandum failed to identify precisely which statements were alleged to be contradictory or conflicting and that the Honesty violation could not be sustained based solely on Acevedo's subjective belief Williams was lying. *Id.* at 010862. Considering the three sustained violations, and considering the prior discipline arising from the HEB Incident, the hearing examiner found that "the appropriate discipline does not rise to the level of an indefinite suspension but clearly arises above a suspension of more than 15 days." *Id.* at 010865. However, because the examiner only has the authority to reduce the indefinite suspension to a temporary suspension of 15 days or less, the examiner instituted a 15-day suspension. *See id.* at 010864–65 (citing *Waco v. Kelly*, 309 S.W.3d 536, 542 (Tex. 2010)). As a result of the hearing examiner's decision, Williams was reinstated to his previous position and given back pay and benefits in the amount of $45,604.58. *Id.* [#42-14] Ex. K at 009828–31.

## III.   The Pit Bull and Williamson County Incidents

After the Hyatt Incident, but before his indefinite suspension, Williams was involved in two additional incidents leading to the initiation of IA investigations into Williams' conduct. The first occurred on June 20, 2013, when Williams responded to reports of an aggressive pit bull. *Id.* [Ex. #42-3] Ex. B-1 at 010543. After he arrived, the dog became aggressive and Williams was forced to shoot the animal. When the first shot was ineffective, Williams followed the animal back between two houses and, when it charged at him again, fired several more shots, killing the dog. *Id.* at 010544.

-6-

The second incident, involving an off-duty domestic dispute at his daughter's apartment in Williamson County, occurred on September 13, 2013. While helping his daughter move out of her apartment, Williams was involved in a physical tussle with his daughter's boyfriend. *Id.* at 010592. The boyfriend was ultimately placed under arrest based on an active misdemeanor warrant and no Williamson County charges were brought against Williams.

APD commenced investigations into both of these incidents; however, the investigations were administratively closed after Williams was indefinitely suspended due to the Hyatt Incident. No employment action has been taken against Williams based on either of these two incidents.

## IV.    Promotional Bypass

On May 5, 2014, while indefinitely suspended, Williams was bypassed three times for a promotion to the rank of Detective/Corporal. The positions were instead filled by the next three officers on the eligibility list. *Id.* [#42-6] Ex. D at 008703 (Promotional Bypass Mem.). The promotional bypass memorandum, signed by Acevedo and filed with the Civil Service Commission, states that Williams was the first eligible candidate for promotion to the three vacant positions and that Williams would be entitled to promotion unless there was a "valid reason" for bypassing him. *Id.* (citing TEX. LOCAL GOV'T CODE § 143.036(f)). According to the memorandum, Acevedo's "decision to bypass Officer Williams three times [was] based on [his] indefinite suspension of Williams on October 2, 2013." *Id.* Acevedo also based the decision on Williams' previous disciplinary history, including the HEB Incident and 90-day suspension arising therefrom, as well as Williams' other work history. *Id.* at 008703, 008708. As a result of being bypassed three times, Williams' name was removed from the promotional eligibility list pursuant to state law.

Williams appealed from the memorandum. Among other arguments, Williams maintained that bypassing him three times in one memorandum without affording him notice and opportunity to be heard violated Texas law, that Acevedo improperly relied on expunged information related to his 90-day suspension that should have been redacted, and that there was no basis to bypass Williams considering his indefinite suspension was later overturned on appeal. *Id.* [#42-5] Ex. D at 011820 (Promotional Bypass Op.). On June 8, 2015, the independent third-party examiner upheld Acevedo's decision to bypass Williams for the promotion. *Id.* Importantly, the examiner held that the "three-in-one bypass" was not impermissible under Texas law, and that although Acevedo had should not have considered expunged material related to the HEB Incident, such material did not influence the decision to bypass Williams. *Id.* [#42-6] Ex. D-1 at 10–12.

## VI.    Procedural History

Williams filed a charge of discrimination with the EEOC on March 27, 2014, and received his right-to-sue letter on April 30, 2014. *See* Third Am. Compl. [#33-2] Ex. B. Williams filed suit in this court on July 29, 2014. *See* Orig. Compl. [#1]. On July 23, 2015, the City filed its answer, but did not move to dismiss any of Williams' claims. *See* Answer [#34]. On January 12, 2016, the City filed the instant Motion for Summary Judgment, seeking judgment in its favor on each of Williams' claims. *See* Mot. Summ. J. [#42]. The motion has been fully briefed and is ripe for consideration.

## Analysis

## I.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and

that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23.

## II.    Williams' Title VII Claims

Williams claims the City's "handling of the Hyatt Incident" and his three promotional bypasses constitute intentional race discrimination and were in retaliation for engaging in protected activity—namely filing a charge of discrimination.  *See* Resp. [#64] at 17, 19.[6]  In response, the City argues Williams failed to establish a prima facie case of discrimination or retaliation, and, even if had, the City has articulated legitimate, nondiscriminatory reasons for the employment actions and Williams has failed to establish the City's proffered reasons were pretextual.  For the reasons that

---

[6] Williams also brings hostile work environment and retaliatory harassment claims against the City. *See* Third Am. Compl. [#33] ¶¶ 29, 31.  Having reviewed the record, and taking the evidence in the light most favorable to Williams, the Court can find no evidence of harassment in this case, let alone any harassment based on race or retaliation. The majority of the alleged discriminatory or retaliatory acts, such as the handling of the Hyatt Incident investigation, the indefinite suspension, and the promotional bypasses, are discrete acts which do not contribute to a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Moini v. Univ. of Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *10 (W.D. Tex. Jan. 10, 2011).  In his self-serving affidavit, Williams points to only two other instances to support his conclusion he was "treated adversely" after filing his EEOC charge and based on his race. Resp. [#64-8] Ex. 28 at 6–7.  The first instance involves his superiors blaming him for failing to activate an in-car camera in connection with an arrest; the second involves negative performance evaluations based on failure to submit police reports. *Id.*  Despite his accusations to the contrary, there is no objective evidence either of these alleged acts were motivated by illicit race discrimination or retaliation.  Williams' subjective beliefs are not sufficient to support either a hostile work environment or retaliatory harassment claim. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).  Consequently the Court finds there is no evidence any of the conduct cited by Williams was "sufficiently severe or pervasive to . . . create an abusive work environment," *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002), and the Court GRANTS summary judgment in favor of the City on Williams' hostile work environment and retaliatory harassment claims.

follow, the Court agrees with the City and finds it is entitled to summary judgment on Williams'

Title VII discrimination and retaliation claims.

## A.      Title VII Burden-Shifting Framework

"Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of

intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City*

*of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).[7]  When a plaintiff bases his or her claims on

circumstantial evidence of discrimination, courts analyze those claims under the burden-shifting

framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under that

framework, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.*

"If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a

legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557.

However, "[t]he employer's burden is only one of production, not persuasion, and involves no

credibility assessment." *Id.* "If the employer meets its burden of production, the plaintiff then bears

the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext

for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each

nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

## B.      Prima Facie Case—Discrimination and Retaliation

The Supreme Court has cautioned, because the facts of each Title VII case will vary, the

prima facie proof required may likewise vary. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The

---

[7] Williams argues the Court need not apply the *McDonnell Douglas* burden-shifting framework here because there is sufficient direct evidence of discrimination to send the case to the jury. *See* Resp. [#64] at 20–21. This argument cannot be taken seriously; there is no evidence on the record tending to prove "the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Because the evidence presented by Williams is circumstantial in nature, the Court must apply *McDonnell Douglas*.

facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). In this case, however, the standard Fifth Circuit prima facie elements of discrimination and retaliation are appropriate.

### 1.    Discrimination

To establish a prima facie case of intentional discrimination, Williams must show he: (1) is a member of a protected group; (2) was qualified for his position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy*, 492 F.3d at 556. The only elements in dispute in this case are (3) and (4).

### 2.    Retaliation

To establish a prima facie case of retaliation, Williams must show: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* at 556–57. The only elements in dispute in this case are (2) and (3).

### 3.    "Adverse Employment Action"

In the Fifth Circuit, there are two different standards for what constitutes an actionable "adverse employment action" under Title VII. In the context of a discrimination claim, only "ultimate employment decisions"—such as hiring, granting leave, discharging, promoting, or compensating—are actionable. *See McCoy*, 492 F.3d at 560 ("[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims . . . .").

The standard is lower for retaliation claims, however. Specifically, for an action to be an "adverse employment action" in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted).

## C.      Application

Williams does not specifically list the employment actions on which his claims are based, instead labeling both the "handling of the Hyatt Incident" and the promotional bypasses discriminatory and retaliatory.  Reading "handling of the Hyatt Incident" broadly and in the light most favorable to Williams, it appears Williams claims the following actions taken by Acevedo and his chain of command to be discriminatory or retaliatory: (1) initiation of the IA investigation into the Hyatt, Pit Bull, and Williamson County Incidents; (2) his indefinite suspension; and (3) the three promotional bypasses. The Court will address each in turn.

### 1.      Prima Facie Case—Employment Discrimination

Williams has failed to establish a prima facie case of intentional discrimination, and, even if he had, he has failed to rebut the City's legitimate, nondiscriminatory reasons for each allegedly improper employment action.

Williams first claims his chain of command's decision to "file on him" for his role in the Hyatt, Pit Bull and Williamson County Incidents was motivated by racial bias.  However, the initiation of an investigation into alleged misconduct does not constitute an adverse employment action for purposes of Title VII discrimination claims. *See, e.g., Cardenas-Garcia v. Tex. Tech.*

-13-

*Univ.*, 118 F. App'x 793, 794 (5th Cir. 2004) ("Performance reviews and investigations . . . do not qualify as ultimate employment actions.").

While the City's decision to indefinitely suspend Williams and bypass him for three promotions do constitute adverse employment actions, Williams has still failed to meet his prima facie burden because he has presented no evidence of similarly situated individuals outside his protected class who were treated favorably under "nearly identical circumstances." *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

With regard to his indefinite suspension, Williams contends he has met the fourth prong of his prima facie case by identifying two APD police officers—Officers Frank Corpus and Richard Will—who, unlike him, were not indefinitely suspended as punishment based on allegations of dishonesty.[8] The Court disagrees. Although Officers Corpus and Will had the same job duties and answered to the same ultimate decision maker, Williams has not shown the officers have an essentially comparable violation history or that their adverse employment actions were taken under "nearly identical circumstances." *See Lee*, 574 F.3d at 260. Indeed, unlike Williams, the record does not establish Officer Corpus or Officer Will had any serious past policy violations on their records. Further, the difference between Williams' conduct and that of Officers Corpus and Will accounts for the difference in their treatment; specifically, unlike Williams, Officer Corpus was not accused

---

[8] Williams identifies another four potential comparators in his interrogatories—William Norrell, Robert Escamilla, Steve Jones, and William Lefebvre—but then makes no mention of them in his Response. The Court finds Williams has waived any argument these individuals were similarly situated. Alternatively, the Court finds none of these officers are similarly situated to Williams. For example, whereas Williams had a 90-day agreed temporary suspension on his employment record, none of these other officers had ever been suspended while working for APD. *See Lee*, 574 F.3d at 260 (The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared . . . have essentially comparable violation histories.").

of giving a false official statement and Officer Will was not accused of violating the Honesty policy. *Id.*

To establish a prima facie case of discrimination based on a failure promote, Williams must present evidence the position he sought was filled by someone outside his protected class. As the Promotional Bypass Memorandum establishes, Acevedo filled the three vacant Detective/Corporal positions with Officers Loren Molleur, Jeff Dwyer, and Craig Nelson Smith. *See* Mot. Summ. J. [#42-5] Ex. D at 011820 (Promotional Bypass Mem.). Williams, however, has not pointed to any evidence of these individuals' race, which is ultimately fatal to his claim.

Further, Williams has not presented evidence of any similarly situated individuals outside of his protected class who were promoted under nearly identical circumstances. First, none of the individuals identified by Williams were serving an indefinite suspension at the time of their bypass. Second, even taking into consideration the reversal of Williams' indefinite suspension, Williams has failed to identify anyone outside his protected class with a comparable disciplinary history who was returned to the promotional eligibility list. For example, Officer Jones, who was bypassed three times but later entered into a settlement agreement with the City whereby Acevedo withdrew the third bypass and returned Jones to the promotional eligibility list, had only a 10-day suspension occurring 20 months prior to the bypass in question. *See Id.* [#42-7] Ex. D-2 at 008697–98 (Jones Promotional Bypass Mem.). In contrast, Williams had a 90-day suspension in lieu of indefinite suspension arising from the HEB Incident, as well as a 15-day suspension based on the Hyatt Incident.

Having failed to meet his prima facie burden of employment discrimination, the City is entitled to summary judgment on Williams' Title VII discrimination claims.

-15-

### 2.    Prima Facie Case—Retaliation

Williams also claims the City's "handling of the Hyatt Incident," which include initiating the investigation and the indefinite suspension, as well as the three promotional bypasses, were in retaliation for his filing of an EEOC complaint in April 2004.  As with his discrimination claims, Williams has failed to make a prima facie case of retaliation.

Again, the City's decision to open investigations into his conduct do not constitute "adverse employment actions" for purposes of Title VII retaliation claims. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) ("[I]nvestigating alleged violations of departmental policies and making purportedly false accusations are not adverse employment actions").  In contrast, Williams indefinite suspension and promotional bypasses do constitute adverse employment actions because they would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

However, even assuming all of the allegedly improper employment actions were considered "adverse," Williams' claims still fail because he has not made a prima facie showing of causation. Williams' primary evidence of a retaliatory motive is the temporal proximity between the filing of his EEOC charge in March 2012 and the initiation of the investigation in April 2013.[9]  This theory has no merit.  Although temporal proximity can sometimes establish causation at the prima facie stage, "the protected act and the adverse employment action must be 'very close' in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d

---

[9] Williams also claims he engaged in protected activity during related and ongoing state court litigation from October 2012 to October 2013.  In its Reply, the City objects to this theory of Title VII liability on the grounds "Williams' Response is the first time he has ever alleged that the lawsuit was a protected activity that he is complaining retaliation for." Reply [#67] at 8. The City's objection is well taken; the Court declines to entertain this theory. "Raising an argument in a response to a summary judgment motion fails to place the issue before the Court." *See Robuck v. Bank of America N.A.*, No. A-13-CA-516-SS , 2014 WL 1342861, at *3 n.3 (W.D. Tex. Apr. 3, 2014).

940, 948 (5th Cir. 2015) (internal citations and quotation marks omitted).  Here, over a year elapsed between the time Williams engaged in protected activity and the initiation of the Hyatt Incident investigation.  This is not "very close."  *See Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 807 (S.D. Tex. 2011) ("The Fifth Circuit has found that gaps of eight or nine months between a protected activity and an adverse event negate a finding of causation.").  The gap between Williams' protected conduct and his indefinite suspension, the Pit Bull and Williamson County Incident investigations, and the promotional bypasses, which all occurred after the Hyatt Incident investigation, are even more attenuated in time.  Consequently, the Court refuses to infer retaliatory motive based solely on the gap in time between Williams' protected act and each of the allegedly retaliatory actions.

Williams also bases his retaliation claim on the testimony of Officer John McMiller, former Austin Police Association President Wayne Vincent, and former Assistant Chief of Police Sam Holt, which, taken together, is presented to establish Acevedo "has a retaliatory nature."  Resp. [#64] at 19.  This testimony is unworthy of credence.  To the extent any of these individuals pontificate about APD employees' fear of retaliation, this testimony is wholly speculative and not within their personal knowledge.  Similarly, to the extent there is testimony regarding examples of alleged retaliation by Acevedo against other officers, this testimony is inadmissible hearsay.  Finally, having not been identified or qualified as experts, neither McMiller, Vincent, nor Holt have the authority to offer opinions about whether Acevedo retaliated against Williams in any particular instance and, even if they were, their subjective beliefs about Acevedo's motivations are "of little value" as there is no record evidence corroborating their accounts.  *See Little v. Republic Ref. Co.*, 924 F.3d 93, 96 (5th

Cir. 1991) (rejecting testimony plaintiff's former supervisor believed plaintiff's termination was motivated by discriminatory animus).

Having failed to meet his prima facie burden of establishing any causal connection exists between the protected activity and the adverse employment actions, summary judgment is due to be granted in favor of the City on Williams' retaliation claims.

### 3.    Failure to Establish Pretext

Even assuming Williams could establish a prima facie case of either discrimination or retaliation, the City is still entitled to summary judgment because Williams has failed to rebut its legitimate, nondiscriminatory reason for each employment action.

### a.    The City's Legitimate, Nondiscriminatory Reasons

As required by *McDonnell Douglas*, the City has proffered a legitimate and nondiscriminatory reason for each of the allegedly discriminatory and retaliatory employment actions.

First, with regard to initiating the Hyatt Investigation, the Internal Affairs Complaint states that Williams was investigated for misconduct during his secondary employment with the Hyatt because he failed to take police action when he was confronted with evidence that a crime might have been committed.  Specifically, Commander Fletcher's complaint states:

> In the course of investigating the complaint, Officer Williams found a device that may have been involved in the commission of a crime.  Officer Williams turned the device in to the hotel staff and did not tag it, turn it into evidence or initiate an offense report.  Officer Williams might have made a comment to the hotel staff stating they may have a criminal offense and may want to contact the police department.  If the above information is true and correct, Officer Williams may be in violation of the Department's policy and/or procedures.

Mot. Summ. J. [#42-3] Ex. B at 10236 (Internal Affairs Compl.).

-18-

With regard to initiating the Pit Bull Incident investigations, the City explains Commander Fletcher believed Williams may have been in violation of APD policy governing discharging a firearm to stop a dangerous and aggressive animal when he "followed the dog and discharged the shotgun at the dog several more times, killing the dog." *Id.* [#42-5] Ex. B at 010427.  With regard to the Williamson County Incident investigation, the City similarly explained it requested an administrative inquiry because Assistant Chief of Police Patrick Ockletree believed Williams may have been in violation of APD policy when Williams "may have made physical contact with the boyfriend of his daughter." *Id.* at 010576.

Second, with regard to the indefinite suspension, the City claims Williams was indefinitely suspended for the following reasons: he had four unanimous sustained policy violations, including an Honesty violation; a unanimous recommendation of indefinite suspension from his chain of command; and a prior 90-day agreed suspension which was granted in lieu of an indefinite suspension. *See* Mot. Summ. J. [#42] at 29.  A sustained Honesty violation mandates indefinite suspension under the Discipline Matrix. *Id.* [#42-4] Ex. C at 003465 (APD Policy 902.41), 003484 (APD Policy 903.1).  In the memorandum justifying Williams' indefinite suspension, Acevedo also emphasized as aggravating factors Williams' repeated failure to accept responsibility for his actions, which lost him the trust and respect of his superiors and his chain of command's confidence in his future job performance. *Id.*  Specifically, Acevedo stated:

> Despite nearly losing his job and being placed on probation, Officer Williams is once again before me for violations of policy involving his failure to perform the basic duties and obligations of a police officer.  Officer Williams' repeated inability or unwillingness to perform his duties is further aggravated by his failure to acknowledge any violation of policy, and his lack of honesty during the interview and disciplinary process.  If Officer Williams cannot truthfully acknowledge his failure to perform his duties and learn from his past mistakes as evidenced by his repeated

-19-

violations of policy, then his chain of command and I have no choice but to indefinitely suspend him. . . .   Consequently, indefinite suspension is not only warranted and appropriate, but mandated under all of the facts and circumstances of this case . . .

*Id.* at 008886–87.

Finally, with regard to the three promotional bypasses, the City explains that Williams was bypassed because he was indefinitely suspended when the positions were vacant. *Id.* [#42-6] Ex. D at 008703.

### b.     Pretext

As with his accusations of discrimination and retaliation, Williams essentially argues each of the City's actions between the filing of his EEOC charge in 2012 until the filing of this lawsuit is evidence that the City's reasons for taking each disputed employment action are pretextual. Williams' arguments can be broken down into the following four categories: (1) a dispute of the underlying factual bases for each of the City's actions; (2) a claim the City violated a number of its own policies in order to indefinitely suspend him and bypass him for the promotions; (3) similarly situated individuals, whether or not they are within his protected class, have been treated more favorably by Acevedo; and (4) his and other officers' testimony establish Acevedo has a retaliatory nature.  For the reasons that follow, none of Williams' arguments are sufficient to create a triable issue with regard to pretext; the evidence clearly demonstrates the City's proffered reasons were real.

First, Williams attempts to relitigate his competency and veracity by disputing the underlying factual bases for the City's decisions to initiate investigations into his conduct, sustain a violation of the Honesty policy based on his allegedly contradictory statements, indefinitely suspend him from the force, and bypass him for promotions to a Detective/Corporal position.  Williams concentrates

his argument on the reasons why he did not engage in any misconduct while working his secondary employment at the Hyatt and why he did not lie or otherwise contradict himself during the subsequent investigation. However, Williams' disagreement about whether he was required to take police action upon encountering the cell phone or whether he was attempting to mitigate his culpability for failing to do so does not support an inference the City's nondiscriminatory reasons were false. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."); *Little*, 924 F.2d at 97 ("[A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered reason is unworthy of credence.").

This conclusion is not altered even where the employer's decision was later overturned on appeal—as was Williams' Honesty violation and indefinite suspension. "[T]he law in this area is clear: an honest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination." *Smith v. St. Regis Corp.*, 850 F. Supp. 1296, 1318 (S.D. Miss. 1994) (citing *Wright v. Western Electric Co., Inc.*, 664 F.2d 959, 964 (5th Cir. 1981)). Indeed, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). In short, Williams' subjective belief he complied with APD policy does not undermine the City's honest belief he had not. Consequently, his argument fails to suggest the City was motivated by discriminatory or retaliatory animus. *See Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–09 (5th Cir. 1999).

Second, Williams argues the City's violation of its own internal policies and procedures, and the Meet and Confer Agreement, support a finding of pretext. Williams cites two procedural irregularities he argues cast doubt on the City's legitimate nondiscriminatory reasons. Williams first claims Acevedo and his chain of command violated the Meet and Confer Agreement as well as internal policy by sustaining two additional policy violations—Neglect of Duty and Honesty—without conducting a separate IA investigation into his alleged dishonesty or giving him proper notice of the new allegations and opportunity to respond. *See* Resp. [#64] at 15–17. Williams claims Acevedo again violated City policy and state law by bypassing him three times in a single memorandum and by improperly relying on expunged material in reaching the conclusion Williams should not be promoted. *Id.* at 21, 22, 24. Williams further challenges his indefinite suspension as a "valid reason" for bypass.

Williams' argument is unconvincing. "A company's failure to follow internal procedures is generally not enough to create a genuine issue of material fact as to discriminatory motives." *Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008) (citing *Moore v. Eli Lilly & Co.*, 990 F.2d 813, 819 (5th Cir. 1993). However, "the nature of the internal policy and the extent of the deviation in the particular case could give rise to evidence of pretext in light of all the other relevant facts." *Martinez v. Tex. Workforce Comm'n–Civil Rights Div.*, No. A-11-CA-837-LY, 2014 WL 931425, at *7 (W.D. Tex. Mar. 10, 2014) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005)).

There is scant evidence Acevedo's handling of Williams' disciplinary process or promotional bypass was irregular, and even if it were, such irregularities would have been de minimis. Williams was afforded the requisite pre- and post-discipline notice and hearings at each step in his disciplinary

process, and there is no evidence the City is required to initiate a separate investigation if it believes the subject of an underlying investigation is being dishonest. Further, the uncontroverted evidence shows Acevedo routinely includes three bypasses in a single memorandum when there are multiple vacancies to be filled and he believes there is a valid reason for bypassing an eligible candidate for each vacancy.

The only clear evidence of any irregularity is the City's release of information that should have been expunged. However, this evidence does little to establish Acevedo *knew* the material was expunged at the time it was released, which would be required to show his reasons for indefinitely suspending or bypassing Williams were false. Considering the relevant facts in the light most favorable to Williams, there is no evidence the city was intentionally sidestepping its own policies for the purpose of subjecting Williams to any discriminatory or retaliatory employment actions.

Third, Williams claims there were similarly situated employees outside his protected class who were treated more favorably. This argument was already rejected in the context of his prima facie case and the Court need not delve too deeply into the issue again here. Put simply, none of the officers identified by Williams were treated favorably under sufficiently similar circumstances such that a reasonable juror could infer pretext.

Finally, failing to encounter any concrete evidence of improper motive, Williams relies on his own subjective belief his superiors treated him differently after filing his EEOC complaint, as well as McMiller, Vincent, and Holt's speculation regarding Acevedo's propensity to discriminate and/or retaliate. Again, the Court has already addressed this argument in the context of Williams' prima facie case, and the same principles apply here: subjective belief is not a substitute for evidence of pretext. *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) ("[W]e cannot allow

-23-

subjective belief to be the basis for judicial relief when an adequate nondiscriminatory reason for the discharge has been presented.").

In sum, even if Williams could make out a prima facie case of discrimination or retaliation, the City is entitled to summary judgment on his Title VII claims because he has failed to create a genuine dispute of material fact that the City's reasons for undertaking the disputed employment actions were pretextual.

## III.   Requests for Declaratory Judgment

In addition to his Title VII claims, Williams requests declarations the City: (1) violated state law when if failed to provide Williams with a notice of claims against him in violation of the Meet and Confer Agreement; (2) violated state or federal law or the Meet and Confer Agreement when it did not identify which of Williams' acts were in violation of the civil service rules; and (3) violated Article 55 of the Texas Code of Criminal Procedure when it electronically disseminated information regarding an expunged matter to the APD community. *See* Third Am. Compl. [#33] ¶ 33.  Williams also requests the Court declare the City violated the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 13 and 19 of the Texas Constitution, and 42 U.S.C. § 1983 by failing to provide him with adequate notice of the administrative claims, failing to provide him an opportunity to be heard, and misusing information in his record that had previously been expunged. *Id.* ¶ 34.

### 1.   Federal Law Claims

With regard to his federal claims, it appears Williams brings a § 1983 due process claim on the grounds the City violated his Fifth and Fourteenth Amendment rights when it failed to provide him adequate pre- and post-deprivation notice and an opportunity to be heard, and further, when it

impermissibly considered material that had been previously expunged under state law. These claims are easily dispatched. While a municipality can be subject to liability under § 1983, such liability only accrues to the extent the alleged constitutional violations result directly from a city custom or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Williams does not directly challenge any City policy, and he has not presented any competent evidence Acevedo or any other City employee engages in a pattern or practice of knowingly disregarding APD officers' procedural due process rights. *See Brown v. Bryan County.*, 291 F.3d 450, 457 (5th Cir. 2000) ("[O]fficial policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." (citation omitted)). Indeed, Vincent's inadmissible speculation about APD's response to criticism being "swift and painful" is not sufficient evidence to create a genuine dispute of material fact with regard to any allegations of unconstitutional customs. Consequently, summary judgment is due to be granted in the City's favor on Williams' request for declaratory relief under to § 1983.

### 2. State Law Claims

Only Williams' requests for declarations the City's conduct violated state law and the Meet and Confer Agreement remain. Although the Court may exercise supplemental jurisdiction over Williams' state law claims, the Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Because the federal law claims over which this Court had original jurisdiction have been resolved in the City's favor, the Court declines to exercise its supplemental jurisdiction over Williams' remaining requests for declarations under state law.

-25-

## Conclusion

Williams has failed to meet his prima facie burden to show Title VII discrimination or retaliation and, even if he had, there is no admissible evidence the City's legitimate, nondiscriminatory reasons for indefinitely suspending or refusing to promote him were pretextual. Further, Williams has failed to present any evidence of a policy or custom of procedural due process violations by Acevedo or any other member of APD. Accordingly, the City is entitled to summary judgment on each of Williams' federal claims. Williams' state law claims are dismissed without prejudice for lack of subject-matter jurisdiction.

Accordingly,

IT IS ORDERED that Defendant City of Austin's Objections and Motion to Strike Evidence Attached to Plaintiff's Response [#62] is DISMISSED as MOOT;

IT IS FURTHER ORDERED that Defendant City of Austin's Motion for Summary Judgment [#42] is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED that Plaintiff Blayne Williams' Title VII race discrimination and retaliation claims as well as his § 1983 procedural due process claims against the City of Austin are DISMISSED WITH PREJUDICE; and

IT IS FINALLY ORDERED that Plaintiff Blayne Williams' pendant state law claims against the City of Austin or DISMISSED WITHOUT PREJUDICE.

SIGNED this the 16th day of March 2016.

SAM SPARKS
UNITED STATES DISTRICT JUDGE